## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS CASIANO, | : | |
|     Plaintiff, | : | |
| | : | |
|   v. | : | No. 5:21-cv-918 |
| | : | |
| KYLE A. RUSSELL, *et al.*, | : | |
|     Defendants. | : | |

## O P I N I O N

**Joseph F. Leeson, Jr.**                                                                 **March 9, 2021**
**United States District Judge**


Plaintiff Luis Casiano, a prisoner currently incarcerated at Lehigh County Jail, filed this civil action pursuant to 42 U.S.C. § 1983, claiming that his civil rights were violated by corrections officials who failed to protect him from an assault by another inmate.  Casiano named as Defendants Kyle A. Russell, Warden of Lehigh County Jail; Deputy Warden McFadden; John Doe #1, a case manager at the jail; John Doe #2, a corrections officer at the jail; and Jane Doe, a case manager at the jail.  *See* Compl. 1, ECF No. 2.[1]  Casiano has also sought leave to proceed *in forma pauperis*.  For the following reasons, the Court grants the application to proceed *in forma pauperis* and dismisses Casiano's Complaint in its entirety without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Casiano is granted leave to file an amended complaint.

---

[1] The Court adopts the pagination assigned to Casiano's submissions by the CM/ECF docketing system.

## I.      FACTUAL ALLEGATIONS[2]

A review of the public dockets reveals that, after an arrest warrant was issued on April 11, 2017 for an alleged probation violation, Casiano was arrested by the Allentown Police Department on November 19, 2020. *See Commonwealth v. Casiano*, CP-39-CR-0004292-2016 (C.P. Lehigh). A *Gagnon II* hearing is scheduled for March 10, 2021. *Id.* at 1. It appears that Casiano has been held in custody at Lehigh County Jail since his arrest. *Id.*

Casiano's claims arise out of Defendants' alleged failure to protect him from an inmate assault during his incarceration at Lehigh County Jail. Although he does not allege specifically when the assault occurred, Casiano asserts that he filed requests to be removed from the pod in which he was housed on December 13, 2020 and December 17, 2020. *See* Compl. 3. He claims that he "questioned why . . . [he] was being housed with violent offenders when . . . [he is] a nonviolent offender." *See id.* Casiano contends that his requests for further review were addressed to "the case manager" and Defendant McFadden, but that they "simply went missing" and he received no response from prison officials. *See id.*

Casiano avers that as the Warden, Defendant Russell "is responsible for care[,] custody and control" and that he "is briefed on all and everything that is essential and of importance in the function of the institution." *See id.* at 4. Casiano also alleges that Defendant Russell "should have known that . . . [Casiano has] the right to be free from harm" and that "placing a nonviolent inmate with a violent inmate would pose the nonviolent inmate a probable act of violence." *See id.* According to Casiano, he now has "permanent hearing problems as a result of the overall staff's deliberate indifference and negligence." *See id.*

---

[2]      The following allegations are taken from Casiano's Complaint and public dockets, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Casiano further contends that Defendant McFadden, as Deputy Warden, is responsible for overseeing the security and housing of all inmates. *See id.* at 5. Casiano alleges that Defendant McFadden "should have known that . . . [Casiano has] the right to be free from imminent danger." *See id.* Specifically, Casiano asserts that Defendant McFadden "is briefed on all violent institutional emergencies; such as assault on a nonviolent inmate by a violent inmate" and that Defendant McFadden "failed to act" on Casiano's "pleas and or questions as to why . . . [Casiano] was housed with violent inmates." *See id.*

Casiano identified Defendant John Doe #1 as the case manager for pod 2C, "which is a violent pod." *See id.* Casiano alleges that Defendant John Doe #1 failed to properly screen and house him, and failed to respond to Casiano's inquiries regarding his housing placement with violent inmates. *See id.* Casiano also asserts that by improperly housing him, Defendant John Doe #1's actions violated his constitutional rights and resulted in harm to Casiano. *See id.* According to Casiano, Defendant John Doe #1 "clearly tried to cover up the incident by properly housing . . . [Casiano] after the assault." *See id.*

In addition, Casiano alleges that Defendant John Doe #2 is the corrections officer who was on duty the day that Casiano was assaulted. *See id.* at 6. Casiano claims that Defendant John Doe #2 failed to ensure that the assailant's door "was secure and locked." *See id.* Casiano further asserts that "[t]he officer failed to protect . . . [him] and knew that in letting out the violent inmates with non-violent inmates would imminently cause a safety issue. The officer knew that there was both violent and non-violent inmates housed together but separated into two categories." *See id.*

With respect to Defendant Jane Doe, Casiano alleges that she "deliberately neglected to perform her job and responsibility in housing" him. *See id.* Casiano also contends that

Defendant Jane Doe "should have known that . . . [he has] the right to be free from harm or assault from another inmate." *See id.*

Casiano claims that each Defendant's deliberate indifference resulted in his injuries and violated his Eighth Amendment rights. *See id.* at 4-6. Casiano seeks actual, nominal, and punitive damages for his injuries. *See id.* at 4. He also requests that the Court impose an injunction "to deter and prevent them from future retaliation." *See id.*

## II.    STANDARD OF REVIEW

The Court grants Casiano leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *See id.* Because Casiano is proceeding *pro se*, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

---

[3]      However, as Casiano is a prisoner, he will be obligated to pay the filing fee in installments pursuant to 28 U.S.C. § 1915(b).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs."  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims).  Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence."  *See Rode*, 825 F.2d at 1207.

Casiano alleges his Eighth Amendment rights were violated when Defendants failed to protect his safety.  *See* Compl. 3-6.  The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes.  *See Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981).  Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates.  *See Farmer v. Brennan*, 511

U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  Courts have found that prison

officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at

833 (internal quotations omitted).  "Being violently assaulted in prison is simply 'not part of the

penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting

*Rhodes*, 452 U.S. at 347).

The Eighth Amendment's "cruel and unusual punishments" clause applies when an

inmate has been convicted of and sentenced for his crimes.  *See Bistrian v. Levi*, 696 F.3d 352,

367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

The Fourteenth Amendment's Due Process Clause entitles an unsentenced inmate "at a

minimum, to no less protection than a sentenced inmate is entitled to under the Eighth

Amendment." *Id.* (citing *Fuentes v. Wagner*, 206 F.3d 335, 341-42 (3d Cir. 2000)).  Here,

Casiano does not allege whether he is in custody at Lehigh County Jail as a pretrial detainee or a

sentenced inmate.  As noted above, however, the state court record reveals that Casiano was

arrested on November 19, 2020 on a probation violation and a *Gagnon II* hearing is scheduled

for March 10, 2021.  *See Commonwealth v. Casiano*, CP-39-CR-0004292-2016 (C.P. Lehigh).

As it appears that Casiano was likely a pretrial detainee at the time of the events in question, the

Fourteenth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir.

2005).  In any event, courts apply the same deliberate indifference standard to a pretrial

detainee's failure to protect claim pursuant to the Fourteenth Amendment, as to the same claim

brought by a sentenced prisoner pursuant to the Eighth Amendment.  *See Edwards v.

Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016); *Williams v. Delaware Cty. Bd. of

Prison Inspectors*, Civ. A. No. 17-4348, 2018 WL 3235788, at *4 (E.D. Pa. July 2, 2018).

For a failure to protect claim against a prison official, a plaintiff must establish that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019). Deliberate indifference in the context of a failure to protect claim requires the plaintiff to show that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol*, 256 F.3d at 133 (citing *Farmer*, 511 U.S. at 844). Nevertheless, the negligent failure to protect an inmate from assault by another prisoner does not rise to the level of a constitutional violation. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Dunlap v. Nicklow*, Civ. A. No. 19-0658, 2020 WL 1922629, at *3 (M.D. Pa. Apr. 21, 2020).

## A.    Failure to Allege Substantial Risk of Serious Harm

The substantial risk of serious harm alleged by a plaintiff asserting a failure to protect claim must not be speculative. In *Bistrian*, the Third Circuit found that a pretrial detainee who alleged that prison officials were deliberately indifferent to a substantial risk of serious harm when they placed him in a locked recreation pen with two inmates with known histories of violent assaults against other inmates, stated a failure-to-protect claim regarding an inmate who he knew and who had threatened him for his cooperation with prison officials as an informant, but failed to state a claim regarding another inmate with whom he had no personal relationship

and who had no connection to his informant work.  *See* 696 F.3d at 371.  The court determined that the alleged risk that "an inmate with a history of violence might attack another inmate for an unknown reason" was too speculative to state a claim of deliberate indifference by prison officials.  *See id*.

Although Casiano alleges deliberate indifference to his safety on the part of each Defendant, the Complaint does not provide sufficient facts to support Casiano's assertion that his constitutional rights were violated.  He alleges that he is a "non-violent" inmate who was housed with "violent" inmates, but he does not explain what facts or circumstances support his conclusion that these inmates were "violent."  Nor does Casiano allege facts from which it could be plausibly inferred that his housing assignment with allegedly violent inmates posed a specific, plausible risk to his safety.  Being housed with inmates who committed serious crimes or who have generally exhibited violent tendencies in the past, without more, does not plausibly establish that an inmate was incarcerated under substantial risk of serious harm sufficient to state a failure to protect claim.  *See Williams v. Delaware Cty. Bd. of Prison Inspectors*, No. 19-2735, 2021 WL 387466, at *5 (3d Cir. Feb. 3, 2021) (finding inmate's "allegations that he was housed on the same block as maximum-security inmates and escorted through spaces occupied by them at . . . [the prison] are too speculative to make out a failure-to-protect claim, as is his allegation that he was housed in the same cell with maximum-security inmates, including a 'super max' prisoner, at the . . . [courthouse]").  Furthermore, the circumstances of Casiano's assault are unclear because he has not described the assault in any detail or provided any information about events leading up to the assault.  Because Casiano has not adequately alleged that he was incarcerated in conditions that posed a substantial risk of serious harm, it follows that he has not adequately alleged the Defendants consciously disregarded any such risk.  However, the Court

further addresses below why Casiano has failed to plead deliberate indifference as to each Defendant because there are additional flaws in his claims.

**B.     Failure to Allege the Defendants' Deliberate Indifference**

**1.     Claims against Case Managers John Doe #1 and Jane Doe**

Casiano does not provide specific facts to support his conclusory assertions that Defendants John Doe #1 and Jane Doe violated his constitutional rights. Casiano identifies Defendant John Doe #1 as the case manager for pod 2C, "which is a violent pod." *See* Compl. 5. Casiano alleges that Defendant John Doe #1 failed to properly screen and house him, and failed to respond to Casiano's inquiries regarding his housing placement with violent inmates. *See id.* According to Casiano, Defendant John Doe #1 "clearly tried to cover up the incident by properly housing . . . [Casiano] after the assault." *See id.* With respect to Defendant Jane Doe, Casiano identified her as the case manager for pod 2B and alleges that she "deliberately neglected to perform her job and responsibility in housing me." *See id.* at 6. Casiano also claims that Defendant Jane Doe "should have known that . . . [he has] the right to be free from harm or assault from another inmate." *See id.*

Because Casiano has not plausibly alleged that his housing placement posed a substantial risk of serious harm, it follows that he has not alleged these Defendants' deliberate indifference to any such risk by virtue of their housing him where they did, or failing to move him upon request. *See Knox v. Doe*, 487 F. App'x 725, 728 (3d Cir. 2012) (finding inmate's complaint alleging that he submitted request slips to prison officials seeking to be relocated within prison failed to contain sufficient factual matter to state a claim for relief that is plausible on its face because inmate failed to show that he "told prison officials which other prisoners were making the threats or why they were doing so"); *Montanez v. Keller*, Civ. A. No. 13-2564, 2015 WL

273199, at *5 (M.D. Pa. Jan. 20, 2015) (vague allegations that merely articulated a generalized fear of harm did not state a plausible claim), *report and recommendation adopted*, Civ. A. No. 13-2564, 2015 WL 3604058 (M.D. Pa. June 5, 2015).  In other words, because Casiano has not alleged facts showing a non-speculative risk that he would be assaulted if housed on the unit where he was assaulted, he has also failed to allege that the case managers consciously disregarded any such risk in housing him there and failing to move him.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").  Additionally, Casiano's allegations that Defendant Jane Doe "should have" been aware of the alleged risk, *see* Compl. at 6, are insufficient to show deliberate indifference on her part.  *See Beers-Capitol*, 256 F.3d at 133.

## 2.    Claim against Corrections Officer John Doe #2

Casiano's claim against Defendant John Doe #2 is similarly too conclusory upon which to premise liability.  Casiano alleges that Defendant John Doe #2 is the corrections officer who was on duty the day that he was assaulted.  *See* Compl. at 6.  He claims that Defendant John Doe #2 failed to ensure that the assailant's door "was secure and locked."  *See id.*  Casiano further asserts that "[t]he officer failed to protect . . . [him] and knew that in letting out the violent inmates with non-violent inmates would imminently cause a safety issue.  The officer knew that there was both violent and non-violent inmates housed together but separated into two categories."  *See id.*

Casiano's allegation that Defendant John Doe #2 failed to ensure that the assailant's door was secure and locked in a pod that housed violent and nonviolent inmates does not plausibly show that Defendant John Doe #2 was actually aware of a risk to Casiano.  Casiano does not

suggest that John Doe #2's failure to lock the door was deliberate, rather than negligent.  Nor does the Complaint allege facts from which it could be inferred that John Doe #2 had reason to be aware that Casiano was at specific risk of an assault.  Casiano's claim against Defendant John Doe #2 thus falls short of meeting the standard under *Iqbal*.  *See Iqbal*, 556 U.S. at 678.

### 3.    Claims against Defendants Russell and McFadden

Casiano alleges that Defendant Russell, as the Warden of Lehigh County Jail, "should have known that . . . [Casiano has] the right to be free from harm" and that "placing a nonviolent inmate with a violent inmate would pose the nonviolent inmate a probable act of violence."  *See* Compl. at 4.  He further states that he now has permanent hearing loss "as a result of the overall staff's deliberate indifference and negligence."  *See id.*

With respect to Defendant Deputy Warden McFadden, Casiano alleges that his requests for review of his housing placement were addressed to Defendant McFadden, but that they "simply went missing" and he received no response from prison officials.  *See id.* at 3.  Casiano further contends that Defendant McFadden "should have known that . . . [Casiano has] the right to be free from imminent danger."  *See id.* at 5.  Additionally, Casiano asserts that Defendant McFadden "failed to act" on Casiano's "pleas and or questions as to why . . . [Casiano] was housed with violent inmates."  *See id.*

Casiano's claims against Defendants Russell and McFadden fail for the same reasons discussed above.  Although Casiano alleges that Defendants acted with deliberate indifference, there simply are not enough facts in the Complaint to plausibly infer that Defendants Russell and McFadden actually were aware of the existence of a substantially serious risk of harm to Casiano's health and safety.  Instead, Casiano alleges that Defendants Russell and McFadden should have been aware of such a risk, *see id.* at 3-5, which is insufficient to state a failure to

protect claim.  *See Beers-Capitol*, 256 F.3d at 133.  At most, Casiano has pled that Defendants

Russell and McFadden acted with negligence which does not support a constitutional claim.  *See*

*Davidson*, 474 U.S. at 347-48; *Dunlap*, 2020 WL 1922629, at *3.  Thus, the Complaint does not

support plausible failure to protect claims against either Defendant Russell or Defendant

McFadden.  *See Iqbal*, 556 U.S. at 678.

 The Court notes that Casiano also alleges Defendant Russell, in his role as Warden, is

responsible for "the care[,] custody and control" and "is briefed on all and everything that is

essential and of importance in the function of the institution."  *See* Compl. 4.  Similarly, Casiano

alleges that Defendant McFadden, as Deputy Warden, is responsible for overseeing the security

and housing of all inmates and "is briefed on all violent institutional emergencies; such as assault

on a nonviolent inmate by a violent inmate."  *See id.* at 5.  To the extent Casiano attempts to hold

either Defendant Russell or Defendant McFadden liable for the alleged actions of other

employees of Lehigh County Jail, such claims cannot proceed as neither Defendant can be held

liable on a *respondeat superior* theory.  *See Iqbal*, 556 U.S. at 676 (a plaintiff cannot hold a

supervisor liable for the actions of his subordinates solely on a *respondeat superior* theory under

§ 1983).

 There are "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d

307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused [the] constitutional

harm.'"  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586

(3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under §

1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Here, Casiano's conclusory assertions that Defendants Russell and McFadden are "responsible" for the functioning of the institution are insufficient to state plausible claims of supervisory liability. There is no indication in the Complaint that either Defendant Russell or Defendant McFadden established a policy, practice, or custom that caused Casiano's injury, or that either participated in or knew of the alleged improper housing assignments.

While Casiano has failed to state a plausible claim against any of the Defendants at this time, the Court is not prepared to find that Casiano, if granted the opportunity to amend, could not state a plausible claim for relief against any or all of the Defendants. Accordingly, Casiano's claims are dismissed without prejudice, and Casiano is granted leave to file an amended complaint within thirty (30) days of the date of this Opinion.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Casiano leave to proceed *in forma pauperis* and dismisses his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Casiano's claims against each Defendant are dismissed without prejudice, and he may file an amended complaint if he is able to cure the defects the Court has identified.

A separate Order follows.


                                              BY THE COURT:


                                              */s/ Joseph F. Leeson, Jr.*
                                              JOSEPH F. LEESON, JR.
                                              United States District Judge